[No. A114848. First Dist., Div. Two. June 30, 2008.]

GINA ONTIVEROS, Plaintiff and Respondent, v.
DHL EXPRESS (USA), INC., Defendant and Appellant.

COUNSEL

Littler Mendelson, Henry D. Lederman, Marlene S. Muraco and Neda N. Dal Cielo for Defendant and Appellant.

The Lucas Law Firm, Kathleen M. Lucas, Michelle T. Duval; Law Offices of Lawrence A. Organ and Lawrence Anthony Organ for Plaintiff and Respondent.

## OPINION

**KLINE, P. J.**—Defendant DHL Express (USA), Inc. (defendant or DHL), appeals the trial court's order denying its motion to compel arbitration after

plaintiff Gina Ontiveros (plaintiff) filed a lawsuit against defendant DHL and four other defendants,[1] raising various claims related to sex discrimination, harassment, and retaliation arising from her employment with defendant. Defendant claims that plaintiff's lawsuit is precluded by an arbitration agreement previously entered into by both parties. Because we conclude the trial court properly found the arbitration agreement was unconscionable, and therefore unenforceable, we shall affirm the order.

## PROCEDURAL BACKGROUND

On December 5, 2005, plaintiff filed a complaint for damages, in which she alleged (1) sex/gender discrimination and harassment, (2) failure to prevent sex/gender discrimination and harassment, (3) retaliation for opposing forbidden practices, and (4) aiding and abetting discrimination and harassment.

On June 2, 2006, defendant filed a petition to compel arbitration and motion to stay judicial proceedings.

On July 6, 2006, the trial court denied defendant's motion to compel arbitration.

On July 19, 2006, defendant filed a notice of appeal.

## FACTUAL BACKGROUND

Plaintiff began working as a hazardous materials inspector at Airborne Express in May 1998 as a contract employee. In October 1999, she was hired as a permanent employee by Airborne Express to work as a field service supervisor.

In April 2000, plaintiff was promoted to aircraft operations supervisor for the Northern Bay Area, including Oakland International Airport. She later held the same position in another area that included San Francisco International Airport. In August 2003, defendant DHL acquired Airborne Express as a wholly owned subsidiary and, in January 2005, Airborne Express was dissolved and its employees, including plaintiff, became employees of defendant DHL.

According to plaintiff, after her April 2000 promotion, she was subjected to ongoing severe sexual harassment and retaliation.

---

[1] Plaintiff filed the lawsuit against defendant (erroneously named as "DHL Express"); Airborne Express, Inc. (which had been acquired by defendant); Deutsche Post World Net; Ken Hafner; and Liny Schwahn. Apparently, defendant DHL was the only defendant served in this action.

In 2004, plaintiff took a short-term disability leave and apparently left defendant's employ in 2005.

## DISCUSSION

### I. *Background*

#### A. *Terms of the Arbitration Agreement*

Plaintiff signed a "Mutual Agreement to Arbitrate Claims" (arbitration agreement or agreement) on October 18, 1999, upon being hired as a permanent employee by Airborne Express. The agreement consists of a single-page document in a small font. No representative of Airborne Express signed the agreement.

In her declaration in opposition to the motion to compel, plaintiff stated that she received the arbitration agreement as part of a packet of hiring paperwork, which her manager said to fill out, sign, and return in order to start her new job and get paid. Plaintiff further stated: "At no time did [my manager] explain or describe the contents of the documents in that hiring packet. The hiring packet contained documents like an Immigration Form I-9, documents pertaining to health care coverage, documents relating to my base compensation, documents welcoming me to the company and other documents the content of which I do not recall. The hiring packet came in a binder file. At no time did anyone inform me that I was signing an Agreement to Arbitrate Claims or explain what that was or how it affected my substantive rights. At no time did anyone inform me that I was required to give up any rights I might have to a jury trial in order to work for Airborne. When I was hired, I was informed that I needed to sign the paperwork in order to get paid and start my new job, and I was not afforded an opportunity [to] negotiate further the terms of my employment. I was already working long hours at that point in time and did not have any real opportunity to review the documents I was told to sign. I was not told that I should review the documents with a lawyer or discuss my rights with a lawyer. The first time I can recall knowing about the Agreement to Arbitrate Claims was when DHL raised this issue in this lawsuit. I had not been given a copy of the agreement prior to filing this lawsuit."

The agreement to arbitrate covered all claims between the parties, whether or not arising out of plaintiff's employment or its termination, including, but not limited to, claims for wages or benefits, claims for breach of contract or covenant, tort claims, claims for discrimination, and claims for violation of any governmental law or regulation. In addition, the agreement provided that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall

have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or part of this Agreement is void or voidable." The agreement stated that arbitration would be held under the auspices of either the American Arbitration Association (AAA) or Judicial Arbitration and Mediation Services, Inc. (JAMS), "with the designation of the sponsoring organization to be made by the party who did not initiate the claim."

The agreement further stated that each party would have the right to take the deposition of one individual and any expert witness designated by another party. "Additional discovery may be had only where the Arbitrator selected pursuant to this Agreement so orders, upon a showing of substantial need." The agreement also stated that plaintiff and defendant would share the costs of the arbitrator and that each party would pay its own costs and attorney fees, with the exception, inter alia, that if a party prevails on a statutory claim that affords the prevailing party attorney fees, the arbitrator may award reasonable fees to the prevailing party.

At the conclusion of the agreement was a sentence in all capital letters stating, "I understand that by signing this agreement I am giving up my right to a jury trial," with a line underneath where plaintiff wrote her initials. Just above her signature was another sentence in all capital letters stating, "I further acknowledge that I have been given the opportunity to discuss this agreement with my private legal counsel and have availed myself of that opportunity to the extent I wish to do so."

### B. *The Trial Court's Ruling*

The trial court based its order denying the motion to compel arbitration on various factors, including, first, that defendant did not establish that it was a successor in interest to Airborne Express under the arbitration provision at issue and, second, that the written agreement was not signed by Airborne Express and defendant did not show that Airborne Express agreed to be bound by the written agreement.

In addition, the court determined that "[t]he clause in the agreement providing that the arbitrator must decide disputes relating to applicability, enforceability or formation of the agreement is not sufficient to require the Court to compel arbitration if the contract is unconscionable. The Court finds that it is required, in the first instance, to determine whether the contract is unconscionable, despite any provision requiring arbitration of issues relating to arbitrability."

The court further stated, inter alia, that its ruling was "supported by important public policy concerns distinct from the policy against enforcing

unconscionable agreements. The Court finds that the integrity of the contractual arbitration procedures requires that the initial threshold determination that there is a valid contract to arbitrate must be made by an actual neutral [i.e., the Court], rather than one with a direct financial interest in the matter remaining in arbitration."

The court then stated: "Having found that it is necessary for the Court to review the arbitration agreement to determine whether it is unconscionable, the Court concludes that the arbitration provision offered by DHL is permeated with [procedural and substantive] unconscionability and will not be enforced."

## II. *Public Policy and the Doctrine of Unconscionability in Mandatory Employment Arbitration Agreements*

In *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 102 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*), our Supreme Court articulated the five minimum requirements for lawful arbitration of nonwaivable statutory civil rights in the workplace pursuant to a mandatory employment arbitration agreement: "Such an arbitration agreement is lawful if it '(1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum.' "

The court then discussed the "judicially created doctrine of unconscionability," which " 'has both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" ' or ' "one-sided" ' results. [Citation.] 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. . . . In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra,* 24 Cal.4th at pp. 113–114.)

The court explained that, in the context of an agreement between an employer and employee to arbitrate disputes, "[u]nconscionability analysis begins with an inquiry into whether the contract is one of adhesion. [Citation.] 'The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength,

relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.] If the contract is adhesive, the court must then determine whether 'other factors are present which, under established legal rules—legislative or judicial—operate to render it [unenforceable].' [Citation.]" (*Armendariz, supra,* 24 Cal.4th at p. 113.) The court then noted that when an arbitration agreement is imposed on an employee as a condition of employment and there is no opportunity to negotiate, the arbitration agreement is adhesive. (*Armendariz,* at pp. 114–115.)

The court further observed that while arbitration is favored in this state as a voluntary means of resolving disputes and while it "may have its advantages in terms of greater expedition, informality, and lower cost, it also has, from the employee's point of view, potential disadvantages" and is generally advantageous to employers "not only because it reduces the costs of litigation, but also because it reduces the size of the award that an employee is likely to get, particularly if the employer is a 'repeat player' in the arbitration system. [Citations.]" (*Armendariz, supra,* 24 Cal.4th at p. 115.) The court further observed that, "[g]iven the lack of choice and the potential disadvantages that even a fair arbitration system can harbor for employees, we must be particularly attuned to claims that employers with superior bargaining power have imposed one-sided, substantively unconscionable terms as part of an arbitration agreement." (*Ibid.*)

### III. *Standard of Review*

On appeal from the denial of a motion to compel arbitration, " 'we review the arbitration agreement de novo to determine whether it is legally enforceable, applying general principles of California contract law. [Citations.]' [Citation.]" (*Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 892 [71 Cal.Rptr.3d 854].) With respect to unconscionability, the trial court's findings "are reviewed de novo if they are based on declarations that raise 'no meaningful factual disputes.' [Citation.] However, where an unconscionability determination 'is based upon the trial court's resolution of conflicts in the evidence, or on the factual inferences which may be drawn therefrom, we consider the evidence in the light most favorable to the court's determination and review those aspects of the determination for substantial evidence.' [Citation.] The ruling on severance is reviewed for abuse of discretion. [Citations.]" (*Murphy v. Check 'n Go of California, Inc.* (2007) 156 Cal.App.4th 138, 144 [67 Cal.Rptr.3d 120] (*Murphy*).)

## IV. The Trial Court's Jurisdiction and Unconscionability of the Provision That the Arbitrator Will Determine Whether the Contract Is Enforceable

Defendant contends that, in light of the provision in the arbitration agreement that the arbitrator "shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation" of the agreement, an arbitrator, not the trial court, should have determined whether a valid agreement to arbitrate exists.

■ The United States Supreme Court has explained: "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so. [Citations.]" (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944 [131 L.Ed.2d 985, 115 S.Ct. 1920].) California law is consistent with federal law on this question. In *Freeman v. State Farm Mut. Auto. Ins. Co.* (1975) 14 Cal.3d 473, 480 [121 Cal.Rptr. 477, 535 P.2d 341], the California Supreme Court stated: "It is, of course, possible for the parties to agree that the arbitrator may determine the scope of his authority. 'The arbitrability of a dispute may itself be subject to arbitration if the parties have so provided in their contract.' [Citation.] Even then, it is necessary for the court to examine the contract to ascertain whether the parties 'have so provided.' [Citations.]" (Accord, *Dream Theater, Inc. v. Dream Theater* (2004) 124 Cal.App.4th 547, 552 [21 Cal.Rptr.3d 322] (*Dream Theater*).)[2]

In the recent case of *Murphy, supra,* 156 Cal.App.4th 138, Division One of this district addressed a situation nearly identical to the present one, in which a plaintiff who sued her former employer had previously signed a "Dispute Resolution Agreement" as a condition of employment. Pursuant to the agreement, covered claims included, inter alia, " 'any assertion by you or us

---

[2] Plaintiff claims that these cases regarding the parties' power to agree in their contract that an arbitrator, rather than the trial court, shall determine gateway questions of arbitrability, apply only to questions regarding the scope of an indisputably enforceable arbitration agreement, not to the question presented here: whether an enforceable agreement to arbitrate exists. Plaintiff cites *Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440, 445–446 [163 L.Ed.2d 1038, 126 S.Ct. 1204] ("unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance") and *Nagrampa v. MailCoups, Inc.* (9th Cir. 2006) 469 F.3d 1257, 1263 (en banc panel held that "it was error to hold that consideration of the unconscionability of the arbitration provision was to be determined by the arbitrator") in support of this proposition. Defendant counters that these two cases did not involve a provision that an arbitrator, rather than the trial court, would decide enforceability questions, and therefore are irrelevant to the issue at hand.

In light of our conclusion that any such rule (i.e., that the parties may agree for the arbitrator to decide questions regarding the validity of the agreement to arbitrate) is not applicable to the particular circumstances of the present case (see text, *post*), we need not definitively resolve the parties' disagreement regarding precisely what these cases stand for.

that this Agreement is substantively or procedurally unconscionable.' " (*Id.* at p. 142.) The plaintiff had opposed the employer's motion to compel arbitration on unconscionability grounds, arguing that a class action waiver in the agreement was substantively unconscionable. (*Id.* at p. 143.) The trial court had denied the motion to compel, concluding that it had the power to rule on unconscionability issues; the agreement was a contract of adhesion; the agreement's class action waiver was substantively unconscionable; the agreement's provisions for arbitration of unconscionability issues and preexisting claims were also substantively unconscionable; and the unconscionable terms would not be severed from the agreement. (*Ibid.*)

The appellate court affirmed the trial court's rulings, explaining: "While the language of the agreement [regarding arbitration of unconscionability issues] could not be clearer, plaintiff's alleged assent to this provision was vitiated by the fact that it was set forth in a contract of adhesion, i.e., a standardized contract drafted by the stronger party and presented to the weaker party on a take-it-or-leave-it basis [citation]." (*Murphy, supra,* 156 Cal.App.4th at p. 144.) The court further concluded that both of two judicial limitations on the enforcement of adhesion contracts[3] were present, in that (1) parties would not ordinarily expect an arbitrator, rather than the court, to determine his or her own jurisdiction, and (2) regardless of the reasonable expectations of the parties, the provision for arbitrator determinations of unconscionability was itself substantively unconscionable. (156 Cal.App.4th at p. 145.) The court noted that substantively unconscionable terms can be generally described as unfairly one sided or lacking in mutuality. (*Ibid.*) The agreement was "facially mutual insofar as it covers assertions of unconscionability by 'you or us' but, as plaintiff points out, the provision is entirely one sided because defendant cannot be expected to claim that it drafted an unconscionable agreement." (*Ibid.*)

The court therefore agreed with the trial court that, "in this contract of adhesion, the provision for arbitrator determinations of unconscionability is unenforceable. Under the circumstances of this case, the judge is the proper gatekeeper to determine unconscionability." (*Murphy, supra,* 156 Cal.App.4th at p. 145.)

---

[3] The court described these two limitations as follows: " 'Generally speaking, there are two judicially imposed limitations on the enforcement of adhesion contracts or provisions thereof. The first is that such a contract or provision which does not fall within the reasonable expectations of the weaker or "adhering" party will not be enforced against him. [Citations.] The second—a principle of equity applicable to all contracts generally—is that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or "unconscionable." ' [Citations.]" (*Murphy, supra,* 156 Cal.App.4th at p. 145.)

We agree with the analysis of the appellate court in *Murphy* and find, in the present case—which also indisputably involves a contract of adhesion[4]—that the provision in the arbitration agreement giving the arbitrator exclusive authority to decide enforceability issues is unconscionable and, therefore, unenforceable.[5] We have a genuine concern about the potential for the inequitable use of such arbitration provisions in areas, such as employment, where the parties are not at arm's length and do not have equal bargaining power. In such situations, in which one party tends to be a repeat player, the arbitrator has a unique self-interest in deciding that a dispute is arbitrable. (Cf. *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 178 [116 Cal.Rptr.2d 671] (*Mercuro*) ["The fact an employer repeatedly appears before the same group of arbitrators conveys distinct advantages over the individual

[4] Indeed the agreement itself states that "the Company's agreement to consider my employment application and any subsequent employment offer to me provide consideration for my promise to arbitrate disputes in accordance with this Agreement."

[5] We also agree with the *Murphy* court's conclusion that two cases cited by the employer there, and by defendant here, in support of their position are unpersuasive. (See *Dream Theater, supra,* 124 Cal.App.4th 547; *Anderson v. Pitney Bowes, Inc.* (N.D.Cal., May 4, 2005, No. C 04-4808 SBA) 2005 U.S.Dist. Lexis 37662, 2005 WL 1048700 (*Anderson*).) First, as the court in *Murphy* observed, the agreement at issue in *Dream Theater*—for the sale of a multimedia and entertainment business—was not a contract of adhesion, and is therefore inapplicable to the present case. (See *Murphy, supra,* 156 Cal.App.4th at p. 146.) Second, the agreement in *Anderson was* an adhesive employment contract that, as here, gave the arbitrator " 'exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including but not limited to any claim that all or any part of this Agreement is void or voidable.' " (*Anderson, supra,* 2005 U.S.Dist. Lexis 37662 at p. *3.) The federal district court in *Anderson* concluded that, because this clause "clearly and unmistakably provides an arbitrator with exclusive jurisdiction to decide issues of arbitrability," it was for the arbitrator to decide questions of unconscionability in the agreement, and it therefore granted the employer's motion to compel arbitration. (*Id.* at p. *5.) The *Murphy* court disagreed with the district court's conclusion, noting that, "[w]hile that conclusion is at odds with the one we reach, *Anderson* is also distinguishable because the plaintiff there, unlike plaintiff here, did not argue that the provision giving the arbitrator power to determine arbitrability was itself unconscionable. (*Id.* at p. *5, fn. 4; [citation].)" (*Murphy, supra,* 156 Cal.App.4th at p. 146.)

In the present case, plaintiff did not argue that the provision giving the arbitrator the power to decide enforceability issues is itself unconscionable. Nor did the trial court expressly find that this provision was unconscionable, although it did so in effect when it ruled that "the integrity of the contractual arbitration procedures" required the trial court, rather than an arbitrator, to make the threshold determination regarding whether the agreement "is unconscionable or otherwise unenforceable for reasons of public policy, as in this case." At our request, both parties have submitted supplemental briefing on the applicability of *Murphy.* Given that we have determined that this issue, which raises only a question of law, is relevant to the present matter, plaintiff is not precluded from arguing on appeal that the provision in question is itself unconscionable. (See, e.g., *In re P.C.* (2006) 137 Cal.App.4th 279, 287 [40 Cal.Rptr.3d 17].)

employee. These advantages include knowledge of the arbitrators' tempera-
ments, procedural preferences, styles and the like and the arbitrators' cultiva-
tion of further business by taking a 'split the difference' approach to
damages."], citing *Armendariz, supra,* 24 Cal.4th at p. 115.)[6]

Indeed, Justice Black spoke to this concern over 40 years ago in *Prima
Paint v. Flood & Conklin* (1967) 388 U.S. 395, 403–406 [18 L.Ed.2d 1270,
87 S.Ct. 1801] *(Prima Paint)*, which involved the question whether a claim of
fraud in the inducement of an entire contract (rather than just the arbitration
clause itself) may be left to the arbitrator to decide, in the absence of
evidence that the contracting parties had intended to withhold that issue from
arbitration. Speaking as well for Justices Douglas and Stewart, Justice Black
stated: "The only advantage of submitting the issue of fraud to arbitration is
for the arbitrators. Their compensation corresponds to the volume of arbitra-
tion they perform. If they determine that a contract is void because of fraud,
there is nothing further for them to arbitrate. I think it raises serious questions
of due process to submit to an arbitrator an issue which will determine his
compensation." *(Id.* at pp. 407, 416 (dis. opn. of Black, J.), citing *Tumey v.
Ohio* (1927) 273 U.S. 510, 523, 535 [71 L.Ed. 749, 47 S.Ct. 437] [defend-
ant's due process right to an impartial judge was violated where judge
received fee for convicting defendant, which he would not have received had
defendant been acquitted].)

Justice Black's concerns are relevant to the issue we face today: whether
arbitrators should be permitted to decide the issue of unconscionability in an
arbitration agreement, particularly one, like that before us, which is a contract
of adhesion. Indeed, an arbitrator who finds an arbitration agreement uncon-
scionable would not only have nothing further to arbitrate, but could also

---

[6] The *Mercuro* court also cited Note, *Compulsory Arbitration of Employment Agreements:
Beneficent Shield or Sword of Oppression?* Armendariz v. Foundation Health Psychcare
Services, Inc. (2001) 22 Whittier L.Rev. 1107: "On the defense side of the ledger, . . . attorneys
who represent that same client, or clients, on many occasions will have a sense of what to
expect from the list of 'available neutrals' promulgated by the arbitration association of choice.
Moreover, large corporations that arbitrate claims nationwide are more likely to select a
national arbitration association to handle *all* of its claims for the purpose of efficiency. This
practice, by its inherent nature, creates a sense of security within the selected association of the
repeat business. The arbitration association, national or otherwise, is in fact, in business to
make a profit. It relies on statutes such as the FAA [(Federal Arbitration Act)] and the CAA
[(California Arbitration Act)], as well as 'repeat' clients, for its continued existence. However,
what would happen to the success of the associations if decisions began going badly, on a
consistent basis, for their biggest clients? Perhaps to avoid this bedlam, arbitrators developed
the practice that opinion and treatise alike have defined as the Solomonic 'splitting of the
difference.' In the final analysis, common sense requires that we question the possibility of an
arbitrator that is truly neutral. As long as there exists little accountability for arbitrators—or
while 'repeaters' are involved—and if one or the other of the parties is directly paying the
fees for the arbitrator, actual neutrality should not be counted upon." *(Id.,* at pp. 1144–1145,
fns. omitted.)

reasonably expect to obtain less business in the future, at least from the provider in question.[7] (See *Prima Paint, supra,* 388 U.S. at p. 416; see also Schwartz, *Enforcing Small Print to Protect Big Business: Employee and Consumer Rights Claims in an Age of Compelled Arbitration,* 1997 Wis. L.Rev. 33, 60–61 ["[I]ndividual arbitrators have an economic stake in being selected again, and their judgment may well be shaded by a desire to build a 'track record' of decisions that corporate repeat-users will view approvingly. Even the independent arbitration companies have an economic interest in being looked on kindly by large institutional corporate defendants who can bring repeat business."], cited in *Armendariz, supra,* 24 Cal.4th at p. 115.)

Our conclusion is further supported by the recent decision in *Bruni v. Didion* (2008) 160 Cal.App.4th 1272 [73 Cal.Rptr.3d 395] (*Bruni*), in which Division Two of the Fourth District addressed the question of what issues can be reserved to the arbitrator. The court noted that, "[r]egrettably, 'arbitrability' is an ambiguous term that can encompass multiple distinct concepts. [Citation.] It seems clear that the parties can agree to have 'arbitrability'—in the sense of the *scope* of the arbitration provisions—decided by the arbitrator." (*Id.* at p. 1286.) The court continued: "But can the parties agree to have 'arbitrability'—in the sense of whether the arbitration clause is valid, binding, and enforceable—decided by the arbitrator?" (*Id.* at p. 1287.) The court went on to discuss this question generally, concluding that the precise nature of the claims must be examined before a determination can be made. (*Ibid.*) For example, if the party resisting arbitration is not denying that it agreed to an arbitration provision, but instead is claiming the provision is unenforceable (e.g., due to illegality or fraud in the inducement), an arbitrator must decide the question. If, on the other hand, the party is claiming it never agreed to the arbitration provision at all (e.g., due to forgery or fraud in the factum), a court must consider the claim. (*Ibid.*)

The *Bruni* court then addressed the specific question of who should decide the plaintiffs' unconscionability claim in light of the arbitration provisions empowering the arbitrator to determine arbitrability.[8] The court stated: "We may assume, without deciding, that if plaintiffs were admitting that they

---

[7] Placing an arbitrator in such a position seems to us to compromise one of the minimum requirements set forth by our Supreme Court for lawful arbitration of nonwaivable statutory civil rights in the workplace pursuant to a mandatory employment arbitration agreement—to provide for neutral arbitrators—and therefore contravenes public policy. (See *Armendariz, supra,* 24 Cal.4th at p. 102.)

[8] In *Bruni,* the arbitration agreement provided "[a]ny disputes concerning the interpretation or the enforceability of this arbitration agreement, including[,] without limitation, its revocability or voidability for any cause, the scope of arbitrable issues, and any defense based upon waiver, estoppel or laches, shall be decided by the arbitrator." (*Bruni, supra,* 160 Cal.App.4th at p. 1281.)

knowingly agreed to the arbitration provisions, they could be required to arbitrate an unconscionability claim." (*Bruni, supra,* 160 Cal.App.4th at p. 1290.) The plaintiffs in *Bruni,* however, had claimed they never knowingly agreed to the provisions: "As in most, if not all, adhesion contract cases, they deny ever reading them." (*Id.* at pp. 1290–1291.) The court concluded that "whatever may be the case with respect to claims of unconscionability in general, here plaintiffs are asserting that they never actually agreed to the arbitration provisions. They cannot be required to arbitrate *anything*—not even arbitrability—until a court has made a threshold determination that they did, in fact, agree to arbitrate *something.*" (*Id.* at p. 1291; accord, *Bouton v. USAA Casualty Ins. Co.* (2008) 43 Cal.4th 1190, 1202 ["a trial court has no power to order parties to arbitrate a dispute that they did not agree to arbitrate"].)[9] The court then analyzed the plaintiff's unconscionability claims, finding multiple instances of unconscionability, including, inter alia, that the provision purporting to require that disputes over arbitrability be decided by the arbitrator was substantively unconscionable because it "was well beyond a layperson's reasonable expectations." (*Bruni,* at p. 1295.)

In the present case, as in *Bruni,* plaintiff denied knowing she had signed an agreement to arbitrate disputes until after she filed her lawsuit. The undisputed circumstances in which plaintiff received and signed the arbitration agreement—including her receipt of the one-page document in a binder file along with numerous other employment-related documents, the lack of time for any real review of the documents, and the failure of anyone to explain the significance of the agreement—support her assertion.

Hence, the reasoning and holding of the court in *Bruni, supra,* 160 Cal.App.4th 1272, as in *Murphy, supra,* 156 Cal.App.4th 138, supports our conclusion that the trial court properly concluded it had the authority to determine the unconscionability issues raised by plaintiff. We therefore turn now to plaintiff's additional claims regarding unconscionability.

---

[9] A panel of the same division that decided *Bruni* had, a short time earlier, held in *Baker v. Osborne Development Corp., supra,* 159 Cal.App.4th 884, 893–894 that, where an arbitration agreement did not " 'clearly and unmistakably' " reserve to the arbitrator the issue of whether the arbitration agreement was enforceable, it was for the court to make that determination, apparently assuming that, otherwise, the arbitrator would consider the issue. (See *First Options of Chicago, Inc. v. Kaplan, supra,* 514 U.S. 938, 943 ["a court must defer to an arbitrator's arbitrability decision when the parties submitted that matter to arbitration"]; see also *Stewart v. Paul, Hastings, Janofsky & Walker, LLP* (S.D.N.Y. 2002) 201 F.Supp.2d 291 [district court enforced an agreement to arbitrate defense of unconscionability based on arbitration agreement provision that arbitrator was to resolve disputes as to whether agreement was void or voidable], cited by *Baker* court.) In *Baker,* the court did not directly address the question raised here and decided a short time later in *Bruni*: whether, in the context of a contract of adhesion, it is for the court, rather than the arbitrator, to decide the issue of unconscionability even if the arbitration agreement reserves that question to the arbitrator.

## V. *Additional Unconscionability Issues*

### A. *Trial Court Background*

Plaintiff argued, in her opposition to defendant's motion to compel arbitration, that the arbitration agreement was unconscionable because (1) it requires an employee to share the costs of the arbitration; (2) it does not provide for adequate discovery; (3) it limits a plaintiff's remedies and may extend a defendant's remedies under statute; (4) it allows the party against whom the claim is lodged to pick more favorable procedural rules and more sympathetic arbitrators; and (5) the confidentiality provisions of the AAA rules favor repeat-player employers.[10]

In its order denying defendant's motion to compel arbitration, the trial court stated: "Having found that it is necessary for the Court to review the arbitration agreement to determine whether it is unconscionable, the Court concludes that the arbitration provision offered by DHL is permeated with unconscionability and will not be enforced. The provision relating to discovery improperly limits discovery in a FEHA [(California Fair Employment and Housing Act; Gov. Code, § 12900 et seq.)] action to an extent that is likely to deprive a claimant, including Plaintiff, of adequate discovery. The provision that requires Plaintiff to pay fees that are unique to the arbitration is also unconscionable. That provision deprives Plaintiff of recovery for costs and expert witness fees in a FEHA proceeding in which she prevails. The Court finds that in light of the multiple provisions that are substantively unconscionable, the agreement shows on its face an intent to impose upon Plaintiff, as the weaker party, an inferior forum that works to the employer's advantage. [(*Armendariz, supra,* 24 Cal.4th 83, 124.)]

"Plaintiff also offers substantial evidence of procedural unconscionability. The agreement is adhesive, since Plaintiff was in a weak bargaining position. The agreement is lengthy, and consists of single-spaced and small print. The agreement was not explained and was presented along with other documents for Plaintiff to sign. [(See the declaration of Ontiveros, par. 3.)]

"For these reasons, the agreement is both procedurally and substantively unconscionable, and is unenforceable."

### B. *Legal Analysis*

First, as already discussed, it is undisputed that the arbitration agreement is a contract of adhesion and is therefore procedurally unconscionable. (See

---

[10] The trial court's substantive unconscionability findings were based on the initial three claims only. The latter two claims apparently were not raised in the trial court.

*Armendariz, supra,* 24 Cal.4th at pp. 114–115; *Murphy, supra,* 156 Cal.App.4th at pp. 144–145; pt. IV., *ante.*) Second, we have previously concluded that the provision requiring that the arbitrator decide enforceability issues is substantively unconscionable. (See *Murphy,* at pp. 144–145; pt. IV., *ante.*)

We now address the trial court's additional unconscionability findings, which defendant challenges as erroneously decided.

### 1. Requirement That Plaintiff Share Fees and Costs Related to Arbitration

The arbitration agreement provides that "[t]he Company and I shall equally share any filing fee and the fees and costs of the Arbitrator" with certain caps on the employee's share.[11]

"[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court. This rule will ensure that employees bringing FEHA claims will not be deterred by costs greater than the usual costs incurred during litigation, costs that are essentially imposed on an employee by the employer." (*Armendariz, supra,* 24 Cal.4th at pp. 110–111.)

Defendant contends the trial court wrongly ruled that this provision requiring plaintiff to pay fees unique to arbitration is unconscionable. That is because, according to defendant, the cap contained in the agreement on the total amount payable by plaintiff would result in her share of the fees being small; her costs in a court action would be much greater than the arbitrator-related fees required by the agreement; and the agreement requires that the arbitration be held in accordance with AAA or JAMS rules, which both state that the employee may not be required to pay costs that are unique to arbitration.

First, whether plaintiff's required contribution is small and whether her court costs in the event of a trial would be greater are irrelevant. Because an employee may not be required to pay fees unique to arbitration, the provision in the agreement requiring such payment is unlawful and hence substantively unconscionable. (See *Armendariz, supra,* 24 Cal.4th at p. 111 ["Although it is

---

[11] Specifically, the agreement provides that the employee's "maximum contribution will be the lesser of (i) 1 weeks' [*sic*] pay at my regular base rate, or (ii) 10% of the amount at issue. I understand that the Arbitrator has the authority upon motion to further reduce my share of the costs and fees upon showing of substantial need."

true that the costs of arbitration are on average smaller than those of litigation, it is also true that [the] amount awarded is on average smaller as well. [Citation.] The payment of large, fixed, forum costs, especially in the face of expected meager awards, serves as a significant deterrent to the pursuit of FEHA claims."].)

Second, defendant fails to note that the agreement specifically states that the parties "agree that, *except as provided in this Agreement,* the arbitration shall be in accordance with the AAA's then-current Model Employment Arbitration Procedures (if AAA is designated) or the then-current JAMS Employment Arbitration rules (if JAMS is designated)." (Italics added.) Thus, because a specific provision of the agreement, by its very terms, trumps the otherwise applicable AAA and JAMS rules, those rules do not apply to the question of employee payment of arbitration-related fees.[12]

The trial court did not err when it ruled that the agreement's provision regarding arbitration-related fees is substantively unconscionable.

### 2. *Discovery Provisions*

The arbitration agreement provides that "[e]ach party shall have the right to take the deposition of one individual and any expert witness designated by another party. Each party also shall have the right to make requests for production of documents to any party. The [parties' 'right to subpoena witnesses and documents for the arbitration'] shall be applicable to discovery pursuant to this paragraph. Additional discovery may be had only where the Arbitrator selected pursuant to this Agreement so orders, upon a showing of substantial need."

---

[12] Defendant also observes that both AAA and JAMS rules provide that, in the event of an inconsistency between their administrative rules and the terms of an arbitration agreement, their administrative rules govern. Thus, according to defendant, their rules regarding payment of arbitration-related fees govern here. (See *Wilks v. Pep Boys* (M.D.Tenn. 2003) 241 F.Supp.2d 860, 864–865 and *DeGroff v. Mascotech Forming Techns.-Fort Wayne* (N.D.Ind. 2001) 179 F.Supp.2d 896, 908–909.) We disagree. As the appellate court in *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 720 [13 Cal.Rptr.3d 88] (*Fitz*) held in similar circumstances, an adverse material inconsistency between the discovery provisions of an arbitration agreement and AAA rules "cannot make the AAA discovery provisions trump the limits on discovery that [the employer] deliberately established in the [arbitration agreement]." The court concluded that the employer had "deliberately replaced the AAA's discovery provision with a more restrictive one, and in so doing failed to ensure that employees are entitled to discovery sufficient to adequately arbitrate their claims. [The employer] should not be relieved of the effect of an unlawful provision it inserted in the [arbitration agreement] due to the serendipity that the AAA rules provide otherwise. [Citation.]" (*Id.* at p. 721.) The same reasoning is directly applicable to defendant's insertion of an unlawful fee-sharing provision in its agreement.

■ "Adequate discovery is indispensable for the vindication of statutory claims. [Citation.] ' "[A]dequate" discovery does not mean unfettered discovery. . . .' [Citation.] And parties may 'agree to something *less than* the full panoply of discovery provided in Code of Civil Procedure section 1283.05.' [Citation.] However, arbitration agreements must 'ensure minimum standards of fairness' so employees can vindicate their public rights. [Citation.]" (*Fitz, supra,* 118 Cal.App.4th at pp. 715–716; accord, *Armendariz, supra,* 24 Cal.4th at pp. 104–106.)

Defendant contends the trial court was wrong when it ruled that the discovery provision in the agreement "improperly limits discovery in a FEHA action to an extent that is likely to deprive a claimant, including Plaintiff, of adequate discovery." Defendant observes that the *Armendariz* court stated that, "whether or not [employees] are entitled to the full range of discovery provided in Code of Civil Procedure section 1283.05,[13] they are at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, *as determined by the arbitrator(s)* . . . ." (*Armendariz, supra,* 24 Cal.4th at p. 106, italics added.) Thus, according to defendant, it is for the arbitrator, not the court, to exercise authority regarding discovery in an employment matter such as this one.

In *Fitz, supra,* 118 Cal.App.4th 702, the arbitration agreement limited discovery to the sworn deposition statements of two individuals and any expert witnesses expected to testify at the arbitration hearing, unless the arbitrator found a "compelling need" to allow other discovery, i.e., unless the parties could demonstrate that a fair hearing would be "impossible" without additional discovery. (*Id.* at pp. 709, 716.) The appellate court held that the discovery provision was unlawful, explaining: "Though [the employer] contends that the [arbitration agreement's] limits on discovery are mutual because they apply to both parties, the curtailment of discovery to only two depositions does not have mutual effect and does not provide Fitz with sufficient discovery to vindicate her rights. 'This is because the employer already has in its possession many of the documents relevant to an employment discrimination case as well as having in its employ many of the relevant witnesses.' (*Mercuro, supra,* 96 Cal.App.4th at p. 183; see also *Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1332 [83 Cal.Rptr.2d 348] ['Given that [the employer] is presumably in possession of the vast majority of evidence that would be relevant to employment-related

---

[13] Code of Civil Procedure section 1283.05, subdivision (a), which is part of the CAA (California Arbitration Act), provides that "the parties to the arbitration shall have the right to take depositions and to obtain discovery regarding the subject matter of the arbitration, and, to that end, to use and exercise all of the same rights, remedies, and procedures, and be subject to all of the same duties, liabilities, and obligations in the arbitration with respect to the subject matter thereof, . . . as if the subject matter of the arbitration were pending before a superior court of this state in a civil action . . . ."

claims against it, the limitations on discovery, although equally applicable to both parties, work to curtail the employee's ability to substantiate any claim against [the employer]'].)" (*Fitz,* at p. 716.)

The court further stated that the only way Fitz could "gain access to the necessary information to prove the claim is to get permission from the arbitrator for additional discovery. However, the burden the [arbitration agreement] imposes on the requesting party is so high and the amount of discovery the [agreement] permits by right is so low that employees may find themselves in a position where not only are they unable to gain access to enough information to prove their claims, but are left with such scant discovery that they are unlikely to be able to demonstrate to the arbitrator a compelling need for more discovery." (*Fitz, supra,* 118 Cal.App.4th at pp. 717–718.)

In the present case, the agreement permits plaintiff to take the deposition of only one individual while plaintiff's trial counsel has estimated that plaintiff will need to take at least 15 to 20 depositions, given that "[t]he case involves harassing conduct directed at plaintiff at two job sites" and that "the conduct took place from approximately 2000 to 2004 and involved numerous employees." Defendant has not disputed counsel's estimate. Moreover, the burden the agreement places on plaintiff to obtain further discovery is quite high, permitting additional discovery only by order of the arbitrator upon a showing of "substantial need."

We conclude that, as in *Fitz,* the permitted amount of discovery is so low while the burden for showing a need for more discovery is so high that plaintiff's ability to prove her claims would be unlawfully thwarted by the discovery provision in the agreement. (See *Fitz, supra,* 118 Cal.App.4th at pp. 716–718; *Kinney v. United HealthCare Services, Inc., supra,* 70 Cal.App.4th at p. 1332.)[14] Accordingly, the trial court did not err

---

[14] Defendant cites *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107 [12 Cal.Rptr.3d 663] (*Martinez*) and *Mercuro, supra,* 96 Cal.App.4th 167, in support of its claim that the discovery provision in this case is not unlawful. In *Martinez,* the appellate court had already held that several other provisions in the arbitration agreement were unconscionable. (*Martinez,* at p. 119.) With respect to the employee's claim that the provision restricting discovery—absent a demonstration of substantial need—to a single deposition and single document request was unlawful, the court stated that it agreed with that argument "in principle," but could not conclude that the limitation necessarily would prevent the employee from vindicating his rights, "given the relatively straightforward allegations of misconduct involved in this action, and the possibility that proof of Martinez's Labor Code claims will rest largely on documentation rather than testimony." (*Id.* at pp. 118–119.) In *Mercuro,* the arbitration agreement limited the parties to three depositions and an aggregate of 30 discovery requests of any kind, with additional discovery requests to be granted only upon a showing of "good cause." (*Mercuro,* at p. 182.) While the appellate court "conceded [that] Mercuro's concern over the discovery provisions is not totally unreasonable," it concluded that, "without

when it ruled that the agreement's discovery provision is substantively unconscionable.[15]

### 3. *Severance*

Defendant contends the trial court erred when it refused to sever the unconscionable provisions and determined, instead, that the entire agreement is unenforceable.

■ "[T]he Legislature expressly and directly recognizes judicial discretion to sever objectionable provisions. The governing statute provides: 'If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.' " (*Abramson v. Jupiter Networks, Inc.* (2004) 115 Cal.App.4th 638, 658 [9 Cal.Rptr.3d 422], quoting Civ. Code, § 1670.5, subd. (a); see *Armendariz, supra,* 24 Cal.4th at p. 122 ["the statute appears to give a trial court some discretion as to whether to sever or restrict the unconscionable [or illegal] provision or whether to refuse to enforce the entire agreement"].) The question for us, therefore, is whether the trial court's refusal to save the arbitration agreement by severing the objectionable provisions was an abuse of discretion.

*Armendariz* points out that the case law implicitly identifies two reasons for severing illegal terms from an arbitration agreement rather than voiding the entire contract. "The first is to prevent parties from gaining undeserved benefit or suffering undeserved detriment as a result of voiding the entire agreement—particularly when there has been full or partial performance of the contract. [Citations.] Second, more generally, the doctrine of severance attempts to conserve a contractual relationship if to do so would not be condoning an illegal scheme. [Citations.]" (*Armendariz, supra,* 24 Cal.4th at pp. 123–124.) The "overarching" question for the court is whether severance serves the interests of justice. (*Id.* at p. 124.)

---

evidence showing how these provisions are applied in practice, we are not prepared to say they would necessarily prevent Mercuro from vindicating his statutory rights." (*Id.* at p. 183.) In the present case, plaintiff's claims are not of the straightforward and limited nature described in *Martinez* and, unlike the plaintiff in *Mercuro*, plaintiff here has shown that the discovery provisions in question would likely thwart her ability to vindicate her statutory rights.

[15] Given our conclusion, in part V.B.3., *post*, that the trial court did not err in finding the arbitration agreement unenforceable due to the combination of procedural unconscionability and at least three instances of substantive unconscionability, we need not address either plaintiff's additional claims of unconscionability or the court's other grounds for denying the motion to compel.

*Armendariz* identified three factors relevant to whether severance is appropriate. The first relates to the agreement's chief object. "If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Armendariz, supra,* 24 Cal.4th at p. 124.) A second factor is whether the agreement contains more than one objectionable term. The fact that an "arbitration agreement contains more than one unlawful provision" may "indicate a systematic effort to impose arbitration on an employee . . . as an inferior forum that works to the employer's advantage" and may justify concluding "that the arbitration agreement is permeated by an unlawful purpose. [Citation.]" (*Ibid.,* fn. omitted.) The third factor is whether "there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement." (*Id.* at pp. 124–125.) In that situation "the court would have to, in effect, reform the contract, not through severance or restriction, but by augmenting it with additional terms" (*id.* at p. 125), which exceeds judicial power to cure a contract's illegality. Where the taint of illegality cannot be removed by severance or restriction, the court "must void the entire agreement." (*Ibid.*)

■ Here, we have concluded that, in this contract of adhesion, at least three provisions of the arbitration agreement are substantively unconscionable, including the provision for arbitrator determinations of enforceability issues; the provision requiring that plaintiff pay a portion of the arbitration-related costs; and the provision severely limiting discovery. Given these multiple unlawful provisions, the trial court did not abuse its discretion in determining that the agreement is "permeated with unconscionability and will not be enforced."[16] (See *Armendariz, supra,* 24 Cal.4th at p. 124; *Baker v. Osborne Development Corp., supra,* 159 Cal.App.4th at p. 896; *Murphy, supra,* 156 Cal.App.4th at p. 149; *Fitz, supra,* 118 Cal.App.4th at pp. 726–727.)[17]

---

[16] We also observe that severance of these unlawful terms would not be sufficient since replacing the agreement's provisions on arbitration-related fees and discovery with the rules of JAMS and/or AAA "would be in effect to rewrite the agreement. Courts cannot cure contracts by reformation or augmentation." (*Fitz, supra,* 118 Cal.App.4th at p. 727; accord, *Armendariz, supra,* 24 Cal.4th at pp. 124–125.)

[17] This case is thus distinguishable from *McManus v. CIBC World Markets Corp.* (2003) 109 Cal.App.4th 76, 101–102 [134 Cal.Rptr.2d 446], cited by defendant, in which the appellate court held that an arbitration agreement with a single unconscionable provision was "not so 'permeated' with unconscionable provisions that it cannot be saved." Here, in light of the multiple unconscionable provisions, the trial court did not abuse its discretion in determining that the agreement was permeated with unconscionability and, therefore, was not enforceable.

## *DISPOSITION*

The trial court's order denying the motion to compel arbitration is affirmed. Costs on appeal are awarded to plaintiff.

Lambden, J., and Richman, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 16, 2008, S165647.